**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TRISTIAN D. BOLONGIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1870-JD** |
| | ) | |
| **TARGET CORPORATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

Plaintiff Tristian D. Bolongia filed a complaint and a separate Application to Proceed in District Court Without Prepaying Fees or Costs ("Application"), Doc. 4. United States District Judge Jodi W. Dishman referred the Application to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). After review, the undersigned recommended the Court deny the Application. Doc. 7. Plaintiff filed an objection to the Report and Recommendation ("Objection"), Doc. 8, and Judge Dishman re-referred the Application for consideration of the Objection, Doc. 9.[1]

[1] Though the undersigned has considered Plaintiff's Objection, it is not a proper filing as it is not signed. Doc. 8 at 12. *See* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented."); *Becker v. Montgomery*, 532 U.S. 757, 764 (2001) ("Without any rule change so ordering, however, we are not disposed to extend the meaning of the word 'signed,' as that word appears in Civil Rule 11(a), to permit typed names. As Rule 11(a) is now framed, we read the requirement of a signature to indicate, as a signature requirement commonly does, and as it did in John Hancock's day, a name handwritten (or a mark handplaced).")

## I. Discussion

The filing fee for a civil case in this Court is $405.00.[2] Courts have discretion in deciding whether to grant a civil litigant permission to proceed in forma pauperis ("IFP"). 28 U.S.C. § 1915(a); *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005). Proceeding IFP "in a civil case is a privilege, not a right—fundamental or otherwise." *White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir. 1998) (citation modified). To succeed on an application to proceed IFP, the movant must show "a financial inability to pay the required filing fees." *Lister*, 408 F.3d at 1312.

### A. Factors for consideration

Factors the Court may consider in exercising its discretion include "whether the complaint is frivolous or malicious; whether the case concerns a prisoner, with special concern placed on prisoner complaints; and the nature of the mandatory and discretionary demands on the applicant's financial resources." *Brewer v. City of Overland Park Police Dep't*, 24 F. App'x 977, 979 (10th Cir. 2002) (citation modified). The undersigned has not reviewed the complaint. Doc. 1; *see* Doc. 6 (referring only the Application), Doc. 9 (same). But even assuming the complaint is not frivolous or malicious, the remaining factors weigh against granting Plaintiff's Application. Plaintiff is not a prisoner, so the special concerns attendant to prisoner cases do not apply.

As to the financial-resources factor, the Court may consider both income and assets. *See Lister*, 408 F.3d at 1311 (noting that an applicant's income, assets, and expenses are

---

[2] The total filing fee includes a base fee of $350.00 plus an administrative fee of $55.00. *See* 28 U.S.C. § 1914(a); *Judicial Conf. Sched. of Fees, Dist. Ct. Misc. Fee Sched.* ¶ 14.

relevant for consideration of an IFP application). With respect to income, the Court considers the degree to which Plaintiff's monthly income exceeds his monthly obligations. *See Scherer v. Kansas*, 263 F. App'x 667, 669 (10th Cir. 2008) (affirming denial of IFP status, in part, because plaintiff's "monthly income exceeded his monthly obligations by several hundred dollars").

**B. Plaintiff's financial information**

**1. Income**

The undersigned has carefully considered Plaintiff's income, assets, and expenses as listed on his Application and as supplemented by the Objection. In the Application, Plaintiff attests that his take-home pay is $1,292.83 every two weeks, which equates to approximately $2,801.23 per month. Doc. 2 at 1; *see also* Doc. 8 at 2. In the Objection, Plaintiff asserts that he was "unemployed for at least half of May 2026." Doc. 8 at 2. He also states that his "cash flow has depended in part on DailyPay." *Id.* at 3. Plaintiff does not, however, indicate that his take home pay is something other than what he attested to in the Application. *See id.* at 2-3.

Plaintiff asserts that his "present income" is "materially uncertain" due to a possible security violation that may result in the termination of his employment. *Id.* at 3. Plaintiff indicates his employer's investigation into the matter "may be resolved during the week of August 3, 2026," *id.*, but Plaintiff has not provided any additional update or informed the Court that his employment has been terminated. Accordingly, the information before the Court indicates Plaintiff's take-home pay is $1,292.83 every two weeks, which equates to approximately $2,801.23 per month.

**2. Assets**

In the Application, Plaintiff reports $544.83 in cash or a bank account, as well as a Kia Forte, though he does not include "its approximate value." Doc. 4 at 2. In the Objection, Plaintiff argues the balance in his bank account changes and points to a negative balance on July 21. Doc. 8 at 9 (citing Doc. 8-1 at 2-3). The undersigned agrees that Plaintiff's bank balance fluctuates.

**3. Regular monthly expenses**

In the Application, Plaintiff lists the following regular monthly expenses:

- Loan $267.01
- Loan $155.11
- Rent $931.00
- Insurance & phone $103.11
- Loan $200.48
- Netflix $26.99
- Gas $76.23
- Trash $76.26 (listed as $152.52 every two months)
- Student loan $355.71
- Apple $3,807.90
- Capital One $1,457.13
- Chase $565.62
- Amex $743.68

Doc. 4 at 2. Because the five listed loans and amounts (Student, Apple, Capital One, Chase, and Amex) were also listed as "debts or financial obligations" and "amounts owed," *id.*, the undersigned understood the five above-listed loan amounts to be total amounts owed rather than amounts owed on a monthly basis. Excluding the five listed loans from Plaintiff's monthly expenses, he indicates regular monthly expenses in the approximate amount of $1,835.00. *Id.*

However, in the Objection, Plaintiff points to two regular monthly expenses that he wants the Court to consider:

1. The Application lists $103.11 for "insurance & phone." *Id.* Plaintiff explains that amount, which he pays his mother every two weeks, should be $143.11 for "cellular telephone service, automobile insurance, and the household water utility." Doc. 8 at 3. In the Objection, Plaintiff references this payment as his "household contribution." *Id.* at 8.

2. Plaintiff explains that his student loan payment is $355.71 per month. *Id.* at 6.

As such, Plaintiff's regular monthly expenses are updated to include the following (changes noted in italics):

- Loan $267.01
- Loan $155.11
- Rent $931.00
- *Insurance, phone & water* *$310.07 ($143.11 every two weeks)*
- Loan $200.48
- Netflix $26.99
- Gas $76.23
- Trash $76.26
- *Student loan* *$355.71*

Doc. 4 at 2; Doc. 8 at 3, 6.

**4. Analysis**

A litigant need not be "absolutely destitute" to be granted IFP status, but a "court need not grant IFP when an appellant has sufficient financial means to pay the filing fee 'and still be able to provide for himself and dependents with the necessities of life.'" *Ward v. Wesley Med. Ctr., LLC*, No. 25-3107, 2026 WL 1133165, at *5 (10th Cir. Apr. 27, 2026) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)). And though a court should not deny a person the opportunity to proceed under 28 U.S.C. § 1915(a)

simply because he is not "absolutely destitute," the court may deny permission for a person to proceed IFP where his monthly income exceeds his monthly expenses by a few hundred dollars. *Brewer*, 24 F. App'x at 979.

Considering the information in the Objection, Plaintiff's monthly income appears to exceed his regular monthly expenses by approximately $402.00. Additionally, though Plaintiff indicates significant debt, his bank account fluctuates and often significantly exceeds the amount of the filing fee. Finally, the undersigned notes Plaintiff did not disclose the amount of his vehicle either in the Application or the Objection, though disclosure of the value of his assets was required by the Application.[3] *See also* 28 U.S.C. § 1915(a)(1) (requiring an applicant for IFP to submit an affidavit including "all assets").

Plaintiff argues the amount by which his income exceeds his expenses "is not a litigation reserve [but] must cover omitted essentials such as food, transportation, medical needs, irregular utility or insurance costs, and other unavoidable necessities." Doc. 8 at 6. But Plaintiff has not provided the Court information necessary for determining (1) whether he has such expenses, and (2) if he does, how much they are. The Application requires

[3] Plaintiff points the Court to a different case in this court in which he was granted leave to proceed IFP, and argues his condition has not changed. Doc. 8 at 12. The undersigned takes judicial notice that, in that case, Plaintiff valued his "car" at $12,000. Application, *Bolongia v. Concentrix*, No. CIV-25-1478-PRW, Doc. 2 (W.D. Okla. Dec. 10, 2025). It is unclear from Plaintiff's Application how much his overall student loan is, but his other consumer debt appears to total approximately $7,250.00. Doc. 4 at 2. As such, the value of his car exceeds his stated consumer debt by approximately $4,750.00.

Additionally, though Plaintiff argues his IFP status in that case corroborates his argument that he should be granted IFP status here, a court has "has wide discretion in denying an application to proceed IFP." *Lister*, 408 F.3d at 1313.

Plaintiff to list "any housing, transportation, utilities, loan payments, or other regular monthly expenses," Doc. 4 at 2 (citation modified), but Plaintiff did not include food, medical needs, irregular utility or insurance costs, or other unavoidable necessities. And he does not state in the Objection that he actually has such expenses, but simply indicates such expenses might exist—without explaining why, if they do exist, he "omitted" them. While the undersigned expects Plaintiff does at least have food expenses, and possibly other "omitted" expenses, the Court cannot assume Plaintiff has expenses to which he has not attested.

Having considered Plaintiff's financial information, it appears "he retains sufficient resources to pay his filing fee and still obtain the necessities of life." *Ward*, 2026 WL 1133165, at *5; *see also id.* (denying IFP after considering the litigant's income, expenses, assets, and debt, and noting that "regardless of how a litigant chooses to spend his money, he need not be excused from paying the filing fee if he has the means to pay because the statutory fee provisions are intended to reduce frivolous litigation and 'require litigants to bear some marginal cost for each legal activity'" (citation modified) (quoting *Cosby v. Meadors*, 351 F.3d 1324, 1327 (10th Cir. 2003))). "While this Court does not suggest that the plaintiff is wealthy or has lots of money to spend, he does appear to have discretionary income and/or assets and it appears that [he] has the ability to spend [his] discretionary funds on filing fees if he desires." *Williams v. Oklahoma*, No. CIV-16-163-R, 2016 WL 7665657, at *2 (W.D. Okla. Feb. 23, 2016) (citation modified) (R&R), *adopted*, 2016 WL 7665658 (W.D. Okla. Apr. 4, 2016), *aff'd*, 667 F. App'x 733 (10th Cir. 2016); *see also Brewer*, 24 F. App'x at 979 (affirming denial of IFP status because plaintiff's "monthly

income exceeds his monthly expenses by a few hundred dollars"); *Durley v. Oklahoma*, No. CIV-25-34-SLP, 2025 WL 510977, at *2 (W.D. Okla. Jan. 17, 2025) (explaining "the Court may consider Plaintiff's assets in determining his indigency" and collecting cases (citation modified)) (R&R), *adopted*, 2025 WL 510930 (W.D. Okla. Feb. 14, 2025).

The undersigned therefore finds Plaintiff has not shown "a financial inability to pay the required filing fees." *Lister*, 408 F.3d at 1312. As such, based on the information provided in the Application and the Objection, the undersigned recommends the Court deny the Application.

## II. Plaintiff's request for service by the U.S. Marshals Service

If the Court requires payment of the filing fee, Plaintiff requests an order directing service by the U.S. Marshals Service. Doc. 8 at 11. The undersigned recommends denying this request, without prejudice, as premature.

## III. Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **DENY** Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, Doc. 4. The undersigned further recommends that if Plaintiff does not pay the $405.00 filing fee in full to the Clerk of Court within 21 days of any order adopting this Report and Recommendation, this action be dismissed without prejudice to refiling, pursuant to Local Civil Rule 3.3(e).

The undersigned additionally recommends denying without prejudice Plaintiff's request for an order directing service by the U.S. Marshals Service.

Plaintiff is advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of Court not later than **September 25, 2026**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 4th day of September, 2026.

Chris M. Stephens
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE